UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

SHERRI WHITE                                                                                    PLAINTIFF

VERSUS                                                          CIVIL ACTION NO. 3:22-CV-549-HTW-RPM

COMMISSIONER OF SOCIAL
SECURITY                                                                                        DEFENDANT

## REPORT AND RECOMMENDATION

Sherri White filed an appeal from the Commissioner of Social Security's (Commissioner)

denial of her claim for disability benefits under the Social Security Act (the Act).  In her

application filed on July 18, 2011, White alleged a disability onset date of November 17, 2010,

based on herniated discs, anxiety, anxiety attacks, and spina bifida.  Doc. [6] at 181, 185.  She

also testified to back, neck, shoulder, and leg pain, as well as numbness in her hands.  *Id.* at 78-

81.  Plaintiff was 32-years old at the date of last insured with a high school education (GED) and

past relevant work as a certified nurse's assistant.  *Id.* at 71, 73.  The vocational expert noted

other past employment as a secretary, insurance clerk, delivery driver for a florist, and medical

records clerk.  *Id.* at 98.  On two prior occasions, White's claim has been denied by the

Commissioner; however, both times the U.S. District Court reversed the Commissioner's

decision and remanded the case for further proceedings.  *Id.* at 22-33, 464-81, 587-90,1144-45.

After the most recent remand, the ALJ conducted an additional hearing and then issued a

decision on February 23, 2021, denying White's disability claim.  *Id.* at 1030-50, 1077-98.  The

ALJ found White had not engaged in substantial gainful activity from the period of alleged onset

(November 17, 2010) through her date of last insured (September 30, 2014).  *Id.* at 1032.  The

ALJ concluded that White had severe impairments of cervical and lumbar degenerative disc

disease, obesity, depression, anxiety, bipolar disorder, and attention deficit hyperactivity disorder (ADHD). *Id.* at 1033. However, the ALJ found White did not have an impairment or combination of impairments that meet any of the Listings found in the Social Security regulations. *Ibid.* Based on White's severe impairments, the ALJ determined she had the residual functional capacity (RFC) to perform light work, except she could not climb ladders or be exposed to unprotected heights or dangerous machinery; she could perform occasional stooping, kneeling, crouching, and crawling; she could understand and remember simple, routine tasks and sustain these tasks for two hours at a time throughout an eight-hour workday, but could tolerate only occasional contact with the public, coworkers, and supervisors. *Id.* at 1035-36. Relying in part on the testimony of a vocational expert, the ALJ found White could not perform her past relevant work as a nurse's assistant; however, there are jobs that exist in significant numbers in the national economy that she can perform. Specifically, the vocational expert testified White would be able to perform the occupations of laundry sorter, garment folder, and bench assembler. *Id.* at 1048-50. Accordingly, the ALJ concluded White is not disabled as defined by the Act. *Id.* at 1050.

The Appeals Council denied White's request for review. *Id.* at 14-19. She then filed the instant complaint in federal court. In her memorandum in support of remand, White argues (1) the ALJ's RFC is not supported by substantial evidence because the ALJ presented a defective hypothetical to the vocational expert that failed to properly account for her mental limitations; and (2) the ALJ failed to consider evidence of White's bilateral neuropathies at the wrists/hand numbness as a severe impairment. Doc. [10].

**Standard of Review**

The federal district court reviews the Commissioner's decision only to determine whether the final decision is supported by substantial evidence and whether the Commissioner used the proper legal standards to evaluate the evidence. *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995). If the court determines the Commissioner's decision is supported by substantial evidence, then the findings are conclusive; and the court must affirm the decision. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *see also* 42 U.S.C. § 405(g). This standard requires supporting evidence that is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The court is not permitted to "reweigh the evidence in the record, nor try any issues de novo, nor substitute our judgment for the judgment of the [Commissioner], even if the evidence preponderates against the [Commissioner's] decision." *Johnson v. Bowen*, 864 F.2d 340, 343 (5th Cir. 1988). "'Conflicts in the evidence are for the [Commissioner] and not the courts to resolve.'" *Brown*, 192 F.3d at 496 (quoting *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990)). While the court may alter the Commissioner's decision if based upon faulty legal analysis, the court should defer to the Commissioner's legal conclusions if they are within a permissible meaning of the statutory or regulatory language. *Chevron, U.S.A., Inc. v. National Resources Defense Council*, 467 U.S. 837, 843–44 (1984).

A claimant bears the burden of proving the existence of a medically determinable impairment that has prevented the claimant from engaging in substantial gainful employment. 42 U.S.C. § 423 (d)(1)(A); 42 U.S.C. § 423 (d)(5). The Social Security Administration (SSA) utilizes a five-step sequential process to determine whether a claimant is disabled. 20 C.F.R. §

404.1520(a), § 404.920(a).  Under this analysis, the ALJ may decide a claimant is disabled if he

finds that (1) the claimant is not employed in substantial gainful activity; (2) the claimant has a

severe, medically determinable impairment; (3) the claimant's impairment meets or equals one

of the listings in appendix 1 to subpart P of § 404; (4) the impairment prevents the claimant from

performing any past relevant work; and (5) the impairment prevents the claimant's ability to

adjust to performing any other work.  *Id.*

The claimant initially bears the burden of proving disability under the first four steps, but

the burden shifts to the SSA for the fifth step.  *Chapparo v. Bowen*, 815 F.2d 1008, 1010 (5th

Cir. 1987).  Therefore, if the claimant proves that he is unable to perform past relevant work, the

SSA must demonstrate that the claimant can perform another occupation that exists in significant

numbers in the national economy.  The burden then shifts back to the claimant to establish that

he cannot perform this alternative employment.  *Id.*

**Residual Functional Capacity—Concentration, Persistence, and Pace**

White argues the ALJ's RFC assessment is not supported by substantial evidence because

the ALJ presented the vocational expert with a defective hypothetical.  Specifically, she argues

the ALJ failed to account for White's moderate limitations in concentration, persistence, or pace.

White contends the ALJ's finding that she could perform simple, routine tasks fails to fully

account for her deficits in concentration, persistence, or pace.

The undersigned finds that the ALJ's hypothetical properly accounted for White's

moderate limitations in concentration, persistence, or pace.  In the RFC, and in the hypothetical

presented to the vocational expert, the ALJ stated that White "could understand and remember

simple, routine tasks and *sustain* these tasks for two hours at a time throughout an eight-hour

workday."  Doc. [6] at 1036, 1089 (emphasis added).  Contrary to the White's contention, the

4

ALJ did not simply limit her to simple, routine tasks to accommodate her mental limitation. Rather, the ALJ included the additional limitation that she could sustain these simple, routine tasks for two hours at a time during an eight-hour workday.  Other courts have found such limitations to properly account for moderate limitations in concentrations, persistence, and pace. *See Ybarra v. Comm'r of Soc. Sec.*, 658 F.App'x 538, 542 (11th Cir. 2016); *Holland v. Comm'r of Soc. Sec.*, No. 1:21-cv-00358-MR-WCM, 2023 WL 2193007, at *2-3 (W.D.N.C. Jan. 26, 2023); *Ledford v. Comm'r of Soc. Sec.*,  No. 8:20-cv-2516-JSM-SPF, 2022 WL 2195001, at *11 (M.D.Fla. June 1, 2022); *Townsend v. Comm'r of Soc. Sec.*, No. 3:16-CV-378-CHL, 2018 WL 283268, at *5 (W.D.Ky. Jan. 3, 2018).  Accordingly, the ALJ explicitly addressed the question of White's concentration, persistence, or pace in the RFC, which he then incorporated into the hypothetical presented to the vocational expert.  Thus, the hypothetical was not defective.

The ALJ's finding of moderate limitation in concentration, persistence or pace is supported by substantial evidence.  As noted by the ALJ, White indicated her ADHD medication helps with her ability to concentrate; treating sources have not noted significant abnormalities that would interfere with White's ability to complete tasks in a timely manner or work at an appropriate pace; and White only received professional mental health treatment twice during the covered period—on February 29, 2012, and April 3, 2012.  Doc. [6] at 1034-35.  Dr. W. Criss Lott, who conducted a consultative mental status examination, found that White had intact attention and concentration; he reported that White displayed no difficulty performing simple calculations and repeating five digits forward and in reverse.  *Id.* at 344.  The ALJ gave little weight to Dr. Lott's ultimate opinion that White would be unable to perform routine, repetitive tasks.  *Id.* at 1042.  The ALJ reached this conclusion in part because of Dr. Lott's "mostly benign mental status examination findings", including White's intact concentration and attention.  *Ibid.*

5

Dr. Amy Hudson, another psychologist, found White had moderate difficulties maintaining concentration, persistence, and pace; however, Dr. Hudson opined White could understand and remember simple instructions and carry out these tasks, concentrate and attend for two-hour periods. *Id.* at 356, 360-62. Dr. Hudson further opined that White could complete a normal work week without excessive interruption from psychologically based symptoms. *Id.* at 362. In certain respects, Dr. Hudson found no significant limitations with White's mental abilities—such as her ability to carry out very short and simple instructions; ability to perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances; ability to sustain an ordinary routine without special supervision; and ability to make simple work-related decisions. *Id.* at 360. The ALJ gave great weight to this portion of Dr. Hudson's opinion; and her opinion is reflected in the ALJ's RFC limiting White to simple, routine tasks sustained for two hours at a time during an eight-hour workday. *Id.* at 1036, 1042. Accordingly, the ALJ's RFC is supported by substantial evidence; and the ALJ properly incorporated White's mental limitations into the hypothetical presented to the vocational expert.

**Severe Impairments—Bilateral Nueropathies at the Wrists and Hand Numbness**

White argues that numbness in her hands and/or wrists should have been considered as a severe impairment. In support of this contention, White points to a 2017 nerve conduction study which showed "mild bilateral and symmetrical median neuropathies at the wrists," which she argues supports the presence of a medically determinable impairment. *See* Doc. [6] at 716. White contends the ALJ failed to discuss the 2017 nerve conduction study in his decision; therefore, the matter should be remanded for consideration of the 2017 test.

The undersigned finds White's position to be without merit. Although the ALJ did not offer a detailed analysis of the 2017 nerve conduction study, he specifically references the study

6

in his decision. He noted that the 2017 study "showed no evidence of a right or left cervical

radiculopathy and physical therapy and wrist braces were advised." *Id.* at 716, 1040. The 2017

nerve conduction study was done more than three years after the covered period. An impairment

that arose or became disabling after September 30, 2014, cannot serve as the basis for finding a

disability. *See Milam v. Bowen*, 782 F.2d 1284, 1286 (5th Cir. 1986). It is unclear what

probative value the 2017 study would have in determining whether White was disabled by the

condition from November 17, 2010, through September 30, 2014. The nerve conduction study

significantly post-dated the relevant time period and therefore "[is] not material to the ALJ's

determination that [plaintiff] was not entitled to benefits for the period sought." *Shave v. Apfel*,

238 F.3d 592, 597 (5th Cir. 2001) (citing *Falco v. Shalala*, 27 F.3d 160, 164 (5th Cir. 1994)

(evidence relating to subsequent deterioration of a previously non-disabling condition is not

material unless it relates to the period for which benefits were sought and denied); *Bryant v.

Saul*, No. 2:19-cv-00659, 2020 WL 5351657, at *12 (S.D.W.Va. Aug.17, 2020) (finding that

nerve conduction studies conducted after the relevant period did not relate back to the period of

disability); *Ellis v. Colvin*, No. 14–589, 2015 WL 222354, at *8 (E.D.La. Jan. 14, 2015) (finding

that electromyography and nerve conduction study post-dating the relevant period did not

establish disability during the relevant period).

White fails adequately to explain how the 2017 study would have any bearing on her

disability from 2010 to 2014, particularly in light of other substantial evidence that revealed no

abnormalities or limitations during and shortly after the relevant time period. As noted by the

ALJ, a 2015 nerve conduction study completed a mere eight months after the covered period was

"completely normal with no evidence of radiculopathy, brachial plexopathey, nerve entrapment,

or generalized peripheral neuropathy." Doc. [6] at 723, 1045, 1047. Dr. Philip J. Blunt reported

that the 2015 study was normal.  *Id.* at 704, 706.  Moreover, Dr. Moody, one of White's treating physicians, assessed her ability to do work-related activities and opined in February 2012 and April 2013 that White's handling (gross manipulation), fingering (fine manipulation), and feeling were not affected.  *Id.* at 424, 1277.  Unlike the 2017 nerve conduction study, Dr. Moody offered his opinion regarding White's manual limitations during the covered period.  The ALJ considered Dr. Moody's opinion, as well as the 2015 nerve study, in his decision to ascribe no additional manual limitations.  *Id.* at 1042-43, 1046-47.  Based on the foregoing, the ALJ's decision not to include limitations based on an impairment of hand/wrist numbness is supported by substantial evidence.

## RECOMMENDATION

Based on the foregoing, the undersigned recommends that the decision of the Commissioner be AFFIRMED.

## NOTICE OF RIGHT TO APPEAL/OBJECT

Pursuant to 28 U.S.C. § 636(b)(1), any party who desires to object to this report must serve and file written objections within fourteen (14) days after being served with a copy unless the time period is modified by the District Court.  A party filing objections must specifically identify those findings, conclusions and recommendations to which objections are being made; the District Court need not consider frivolous, conclusive or general objections.  Such party shall file the objections with the Clerk of the Court and serve the objections on the District Judge and on all other parties.  A party's failure to file such objections to the proposed findings, conclusions and recommendation contained in this report shall bar that party from a de novo determination by the District Court.  Additionally, a party's failure to file written objections to the proposed findings, conclusions, and recommendation contained in this report within fourteen (14) days

after being served with a copy shall bar that party, except upon grounds of plain error, from

attacking on appeal the proposed factual findings and legal conclusions that have been accepted

by the district court and for which there is no written objection. *Douglass v. United Services*

*Automobile Association*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

SO ORDERED AND ADJUDGED, this the 30th day of January 2024.


/s/ *Robert P. Myers, Jr.*
ROBERT P. MYERS, JR.
UNITED STATES MAGISTRATE JUDGE